IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

VICKY LYNN SHAW                                                    PLAINTIFF


     v.                  CIVIL NO.      3:09-CV-3005-JRM


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                    DEFENDANT

<u>MEMORANDUM OPINION</u>


      Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for

supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter

"the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must

determine whether there is substantial evidence in the administrative record to support the

Commissioner's decision.  *See* 42 U.S.C. § 405(g)

I.    <u>Procedural Background</u>:

      Plaintiff filed her DIB and SSI applications on November 14, 2005, claiming disability

since October 21, 2005 (Tr. 78-85, 115-121). The state Disability Determination Services

denied Plaintiff's applications initially and on reconsideration (Tr. 8-39, 41-43, 350-357).

Pursuant to Plaintiff's request, an administrative law judge (ALJ) conducted a hearing on

November 9, 2007, where Plaintiff and a vocational expert appeared and testified (Tr. 358-400).

Attorney Jeffrey S. Ceigel represented Plaintiff at the administrative hearing (Tr. 358). On July

22, 2008, the ALJ issued an unfavorable decision, finding that Plaintiff was not under a disability

from the alleged onset date through the date of the decision (Tr. 13-24). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review (Tr. 10-12). Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## II.   <u>Applicable Law</u>:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.   Applicable Facts

At the time of the administrative hearing, Ms. Shaw was fifty-one (51) years old. She only completed the 10th grade, but obtained her GED. Her relevant work history includes working as a poultry plant deboner and eviscerator, egg processor, general office clerk and fast food worker during the last fifteen years. (Tr.38 1-384).

On August 3, 1994 the Plaintiff was brought to the Carroll Regional Medical Center by the local police department for anxiety. She was diagnosed with chronic depression/anxiety, treated and released to the police department to jail. (Tr. 146). A radiology report showed no

acute abnormality. (Tr. 147).

Between August 11, 1994 and March 15, 1995, as a result of a court order, the Plaintiff was seen at Ozark Guidance Center, Inc. for alcohol and poly substance abuse. (Tr. 238-244).

On February 11, 1995 the Plaintiff presented to the Carroll Regional Medical Center for panic and anxiety attack. She was diagnosed with depression and prescribed Xanax. (Tr. 145).

On May 21, 1995 the Plaintiff was admitted to Charter Behavioral Health Systems of Northwest Arkansas. (Tr. 151-162). The Plaintiff was diagnosed with major depression with psychotic features, alcohol abuse, marijuana abuse and cocaine abuse and to have a borderline personality disorder. (Tr. 151). She was also diagnosed with panic attacks without agoraphobia. (Tr. 161). The Plaintiff was found to have no physical problems that restricted her from participation in the program (Tr. 157) and the Plaintiff denied any major medical difficulties. (Tr. 159).

On August 29, 2001 the Plaintiff was admitted to the Casa Grande Regional Medical Center complaining of heart problems. (Tr. 264). The radiology report was negative. (Tr. 269).

Between October 15, 2001 and September 15, 2003 the Plaintiff was seen at Advance Cardic Specialists concerning her chest pains. (Tr. 286-302). Dr. Zeitlin's impression was that the Plaintiff had PSVT[1] with palpitations. He prescribed Lopressor 50 mg and told the Plaintiff to avoid caffeine and alcohol. (Tr. 302). On October 31, 2001 Dr. Zeitlin noted that the Plaintiff had a normal LV systolic function (Tr. 300). On October 30, 2001 Dr. Zeitlin noted that Plaintiff was not taking Lopressor at full doses and would cut them in half certain evenings. He noted that the halter monitor on Lopressor shows normal sinus rhythm and one short run of PSVT at 145

_____

[1]Paroxysmal supraventricular tachycardia (PSVT) is an occasional rapid heart rate.

per minute, less than one minute in duration, otherwise, no other PSVT. (Tr. 298). An

echocardiogram showed normal LV systolic function. (Tr. 296-297).  Plaintiff saw Dr. Zeitlin

again on December 5, 2001 and he decreased the dosage of Lopressor to 25 mg. (Tr. 294).  After

the Plaintiff came to her appointment on February 19, 2002 very stressed (Tr. 293) Dr. Zeitlin

increased the Lopressor back to 50 mg. (Tr. 292). Dr. Zeitlin noted on September 16, 2002 that

the ECG showed normal sinus rhythm and that a previous left heart catherterization in November

of 2001 was negative. (Tr. 291). On October 2, 2002 Dr. Zeitlin noted that all of his impressions

were normal (Tr. 290) as they were on October 7, 2002 (Tr. 289).  On October 28, 2002 Dr.

Zeitlin noted that the 24-hour Holter monitor show minimal PSVT, controlled better with beta

blocker and the Plaintiff was again cautioned to avoid caffeine and alcohol. (Tr. 287). On

September 15, 2003 Dr. Zeitlin noted that the PSVT was controlled and Plaintiff was to continue

the management as ordered. (Tr. 286).

Between April 29, 2005 and July 12, 2006 the Plaintiff was seen at the Ozark Guidance

Center and relevant records will be referred to in the Discussion. (Tr. 200-237).

October 21, 2005 is the claimed date of disability.

On February 23, 2006 the Plaintiff was seen by Dr. Charles Nichols for the purpose of

performing a Mental Status and Evaluation of Adaptive Functioning. (Tr. 163-185).  Dr. Nichols

determined that the Plaintiff's IQ was between 71-79 (Tr. 165) and after a series of test

diagnosed the Plaintiff with a Depressive Disorder NOS, Anxiety Disorder NOS and a GAF of

52. (Tr. 166).  Dr. Nichols did not find the Plaintiff to be Markedly Limited in Understanding and

Memory, Sustained Concentration and Persistence, Social Interaction or Adaptation. (Tr. 167-

168).  Dr. Nichols ultimately listed the Plaintiff's Rating of Functional Limitations as follows:

1.  Restrictions of Activities of Daily Living: Mild; 2. Difficulties in Maintaining Social

Functioning: Moderate; 3. Difficulties in Maintaining Concentration, Persistence or Pace:

Moderate; and 4. Episodes of Decompensation, Each of Extended Duration: None. (Tr. 183).

On March 9, 2006 the Plaintiff presented to the Harrison Cardiology Clinic complaining

of exertional chest tightness and shortness of breath. (Tr. 192).   Dr. Mears' impression on

March 13, 2006 was that her results were normal. (Tr. 199). The radiology report on May 2, 2006

showed that the heart and mediastinum were normal. (Tr. 198).

Between July 31, 2006 and October 11, 2007 the Plaintiff begins to see the Ozark

Guidance, Inc. again and is diagnosed with alcohol dependence throughout. (Tr. 310-339). Dr.

Jones refused to give certain medication until the Plaintiff stopped drinking. (Tr. 239). The

plaintiff resented being advised about her drinking. (Tr. 334). She was still trying to quit smoking

on September 25, 2006. (Tr. 332). Plaintiff was not taking medication as prescribed. (Tr. 328).

On August 23, 2007 the Plaintiff reported that her consumption of alcohol had increased and she

was facing several "charges". Plaintiff accepted little responsibility for her actions and did not

appear willing to work on her problems. (Tr. 315). On October 11, 2007 the Plaintiff admitted

that she continued to abuse alcohol and the therapist noted that the Plaintiff was "not willing to

accept coping techniques provided by therapist." (Tr. 310).

On October 18, 2007, Rebecca Zelena , a licensed social worker and Dr. Jones, the staff

psychiatrist jointly completed a Medical Source Statement - Mental concluding Ms. Shaw was

*moderately* limited in her ability to:

> l) understand and remember very short and simple instructions, 2) understand
> and remember detailed instructions, 3) carry out detailed instructions, 4)
> maintain attention and concentration for extended periods, 5) interact

appropriately with the general public, 6) accept instructions and respond
appropriately to criticism from supervisors, 7) maintain socially appropriate
behavior and to adhere to basic standards of neatness and cleanliness, 8)
respond appropriately to changes in the work setting, 8) be aware of normal
hazards and take appropriate precautions, 9) travel in unfamiliar places or use
public transportation, 10) in her ability to set realistic goals or make plans
independently of others and found her *markedly* limited in her ability to get
along with coworkers or peers without distracting them or exhibiting
behavioral extremes.

This opinion form provides "if drug addiction and/or alcoholism is a diagnosis, this
statement sets forth the limitations remaining if the claimant stopped doing drugs and/or
alcohol." (Tr. 341-342).

On February 11, 2008 Dr. Eric Spann, a medical doctor, also completed a Medical Source
Statement - Mental concluding Ms. Shaw's was *moderately* limited in her ability to:

1) remember locations and work-like procedures, 2) understand and remember
detailed instructions, 3) perform activities within a schedule, 4) maintain
regular attendance, and be punctual within customary tolerances, 5) sustain an
ordinary routine without special supervision, 6) make simple work related
decisions, 7) complete a normal workday and workweek without interruptions
from psychologically based symptoms and to perform at a consistent pace
without an unreasonable number and length of rest periods, 9) accept
instructions and respond appropriately to criticism from supervisors, 10)
maintain socially appropriate behavior and to adhere to basic standards of
neatness and cleanliness, II) respond appropriately to changes in a work
setting, 12) travel in unfamiliar places or use public transportation and in her
ability to set realistic goals or make plans independently of others and
*markedly* limited in her ability to:
1) maintain attention and concentration for extended periods, 2) work in
coordination with or proximity to others without being distracted by them, 3)
her ability to interact appropriately with the general public.

Again, Dr. Spann's opinion form includes the effects of alcohol or drug abuse as it
provides "if drug addiction and/or alcoholism is a diagnosis, this statement sets forth the
limitations remaining if the claimant stopped doing drugs and/or alcohol." (Tr.344-345). It

appears from an internet search that Dr. Spann is a family practice physician.  The court has searched the record and can find no document showing that Dr. Spann is the Plaintiff's treating physician and the Plaintiff does not point the court to any document in the file showing that Dr. Spann has treated the Plaintiff.

IV. **Discussion**:

The Plaintiff first contends that the ALJ erred in finding the Plaintiff's substance abuse was a contributing factor material to an otherwise favorable disability determination. ( Doc. 5, p. 3).

Alcoholism and drug addiction have been eliminated as a basis for obtaining Social Security disability benefits.[2] In such cases, an ALJ is required to make a disability determination under two separate conditions. See generally, e.g., *Merritt v. Astrue*, 609 F.Supp.2d 850, 865 (E.D.Mo.2009) (citing *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir.2000)). The first determination is made based on the existence of all of the plaintiff's credible impairments including alcoholism and/or drug addiction. The second determination is made considering all of the plaintiff's credible impairments except alcoholism and/or drug addiction. If a plaintiff is considered disabled in the former instance, but not in the latter, alcoholism and drug addiction is a material factor contributing to disability and the individual would be ineligible for disability benefits based on Pub.L. 104-121 and 20 C.F.R. § § 404.1535(b)(2) & 416.935(b)(2).  *Parks v. Astrue,*  2009 WL 3165538, 15 (D.Neb.) (D.Neb.,2009)

---

[2]Section 105 of Pub.L. No. 104-121, codified at 42 U.S.C. § 423(d)(2)) & 42 U.S.C. § 1382c(a)(3)(J), provides, "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

In the decision, the ALJ found that Plaintiff had severe impairments due to dysthemia/depression, generalized anxiety disorder, posttraumatic disorder (PTSD), personality disorder, alcohol abuse, and paroxysmal supraventricular tachycardia (Tr. 16 - Finding 3). The ALJ found that Plaintiff's mental impairments met a listing in, Appendix 1, Subpart P, Regulation No. 4, for presumptive disability (Tr. 16 - Finding 4). The ALJ found that if Plaintiff stopped the substance abuse, the remaining limitations would cause more than a minimal impact on her abilities to perform work activities; therefore, Plaintiff would continue to have an impairment or combination of impairments that were severe (Tr. 18 - Finding 5). However, if Plaintiff stopped the substance abuse, her impairment or combination of impairments would not meet or medically equal a listing (Tr. 19 - Finding 6). The ALJ determined that if Plaintiff stopped the substance abuse, Plaintiff would have the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, and to sit, stand, and walk six hours in an eight-hour workday (Tr. 48 - Finding 6). The ALJ also found that Plaintiff was restricted from driving and was limited to jobs that involved only noncomplex, simple instructions with little judgment and work that is routine, repetitive, and learned by rote with few variables; was able to engage in work that involved only superficial contact incidental to work with the public and coworkers; and was able to work where the supervision was concrete, direct, and specific (Tr. 20 - Finding 7). The ALJ concluded that if Plaintiff stopped the substance abuse, she would be able to perform her past relevant work as an egg inspector, deboner, and eviscerator, which did not require the performance of work-related activities precluded by her residual functional capacity (Tr. 23 - Finding 8).

**Alcoholism:**

A claimant has the initial burden of showing that alcoholism or drug addiction is not material to the finding of disability. *See Brown v. Apfel*, 192 F.3d 492, 497-98 (5th Cir.1999), cited with approval in *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir.2000). The "key factor" in determining whether drug addiction or alcoholism is material to a determination of disability is whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. See 20 C.F.R. § 404.1535(b)(1); *see also Jackson v. Apfel*, 162 F.3d 533 at 537. The focus of the inquiry is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause. See 20 C.F.R. § 404.1535(b)(1); see also *Jackson*, 162 F.3d at 537-38. *Pettit v. Apfel* 218 F.3d 901, 903 (C.A.8 (Ark.),2000).

The following medical records dated during the relevant period, which are cited throughout the decision, however,  support the ALJ's finding that Plaintiff has a substance abuse problem:

> August 3, 1994 Plaintiff was brought into the Carroll General Hospital by Carroll County Police Department and Plaintiff admitted to being hospitalized 17 days before for anxiety and alcohol abuse. (Tr. 146);
>
> September 22, 1994, as a result of court order, the Plaintiff was seen by Ozark Guidance Center for chronic alcoholism. (Tr. 240). She was treated until March 15, 1995. (Tr. 238).
>
> May 21, 1995 the Plaintiff was admitted to Charter Behavioral Health System for major depression after alcohol, cocaine and marijuana use. (Tr. 158). The Plaintiff admitted to smoking one pack of cigarettes per day and drinking a six-pack of beer per day. (Tr. 155). The Plaintiff admitted that she was recently in a "drug rehabilitation-type program" but she denied that she was an alcoholic. (Tr. 158). The Plaintiff was diagnosed with alcohol and substance abuse. (Tr. 161).
>
> May 6, 2005, a medical note stating that Plaintiff binge drinks; she reported not drinking for approximately a week; and her "increase in anxiety is probably related to stopping drinking alcohol" (Tr. 234,

236);

May 12, 2005, a medical note stating that Plaintiff reported past heavy use of alcohol and current binge drinking and cannabis use; stating that her poor judgment while drinking has lead to aggressive behavior; and showing a diagnosis of alcohol abuse (Tr. 232-233);

May 17, 2005, a medical note stating that Plaintiff was "drinking with her new friend" (Tr. 229);

November 16, 2005, a medical note stating that Plaintiff continues to use alcohol sporadically and is applying for disability (Tr. 223);

June 27, 2006, a medical note stating that Plaintiff is drinking beer and feeling very stressed (Tr. 205);

June 29, 2006, a medical note stating that Plaintiff continued to use alcohol (Tr. 203);

July 31, 2006, Edwin C. Jones, M.D., a psychiatrist, advised Plaintiff to stop drinking (Tr. 339);

August 28, 2006, a medical note stating that Plaintiff has a "polysubstance abuse" problem (Tr. 337);

September 6, 2006, a medical note stating that Plaintiff "resents being advised re[garding] drinking" (Tr. 334);

September 25, 2006, a medical note stating that Plaintiff has a "chronic alcohol abuse" problem (Tr. 332);

December 18, 2006, a medical note stating that Plaintiff has an alcohol dependence and "addiction/abuse issues," and sometimes she drinks when using medications (Tr. 327-328, 330);

April 17, 2007, a medical note stating that Plaintiff has "alcohol dependence" (Tr. 325);

July 6, 2007, a medical note stating that Plaintiff reported drinking occasionally, and that she experimented with "Acid early in her life" (Tr. 323); and

August 23, 2007, Plaintiff reported that her "consumption of alcohol

has increased, and she now faces several [criminal] charges" (Tr. 315).

Not withstanding the Plaintiff repeated protest throughout her records that she is not an alcoholic the record is clear that she abuses alcohol on a regular basis and had done so for many years.  Untying the Gordian Knot of Alcoholism and Mental Impairments is compounded when, as here, the alcoholic abuse continues through the evaluation period.

"An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow. See Social Security Administration Emergency Teletype, No. EM-96-94 at Answer 29 (Aug. 30, 1996), quoted in *Fastner v. Barnhart*, 324 F.3d 981, 986 (8th Cir.2003)

**PSVT:**

On August 29, 2001 the Plaintiff was admitted to the Casa Grande Regional Medical Center complaining of heart problems. (Tr. 264).  The radiology report was negative. (Tr. 269). Between October 15, 2001 and September 15, 2003 the Plaintiff was seen at Advance Cardic Specialists concerning her chest pains (Tr. 286-302) and she was seen by Dr. Zeitlin's who diagnosed her with PSVT with palpitations. He prescribed Lopressor 50 mg and told the Plaintiff to avoid caffeine and alcohol. (Tr. 302). By October 2002 Dr. Zeitlin noted that the PSVT was controlled,(Tr. 286) the Plaintiff was cautioned again to avoid caffeine and alcohol and was discharged.

The Plaintiff continued to work during the time period of 2001- 2005 at Mindies Eloy-Casa Grande, Inc. It is clear that the PSVT was managed with medication and the absence of alcohol and impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).  It is clear that the Plaintiff's continued use of alcohol and tobacco is a contributing factor material to the determination of disability as it relates to PSVT.

**PTSD:**

The Plaintiff, by her representations, was physically and sexually abused as a child. (Tr. 104, 160).  The Plaintiff acknowledged that she had recurring bad memories of these events with nightmares but they gradually disappeared. (Tr. 201).  In July 2006 the Plaintiff was on Prozac, Zoloft, Celexa and Seroquel but claimed they were not effective. (Id.). The Plaintiff's first diagnosis in 1995 did not contain any reference to PSTD. (Tr. 151). Her diagnosis by Dr. Nichols did not contain any reference to PSTD. (Tr. 166).  The only reference to PSTD occurs on June 29, 2006 and that entry shows it to be resolving. (Tr. 202).  Therapy notes dated September 10, 2007 indicate that the Plaintiff believed that she suffered from PSTD but the therapist explained that her diagnosis was not PSTD. (Tr. 312). There is no evidence that PTSD is related to the Plaintiff's claim for disability except to the extent that it contributes to her anxiety and depression.

**Depression/Anxiety Attacks:**

The Plaintiff first sought clinical treatment on August 11, 1994 at Ozark Guidance Center, Inc. where she was court ordered to participate. (Tr. 237).  She was diagnosed with chronic alcoholism (Tr. 238, 240, 242) and Plaintiff admitted drinking since age 14. (Tr. 244). She was discharged on May 15, 1995. (Tr. 238).

The Plaintiff again sought treatment at Charter Behavioral Health Systems for anxiety, panic and depression on May 21, 1995.  The Plaintiff had been in drug rehabilitation-type program shortly before but she denied she was alcoholic. (Tr. 158). The Plaintiff stated that she tried to "combat her mood swings" with substance abuse. (Tr. 159).  She was diagnosed with major depression, recurrent, with psychotic features, alcohol abuse, marijuana abuse, cocaine abuse, panic attacks without agroraphobia and probable borderline personality disorder. (Tr. 161). The Plaintiff was placed on Asendin (antidepressant) and was discharged on May 26, 1995 with the above diagnosis and a determination that she was stable on medications. (Tr. 153).

Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.*  439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

It is apparent that the medications worked and worked well because the Plaintiff was gainfully employed from 1995 until 2005. (Tr. 45-49). *See Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) (in assessing credibility, court noted that plaintiff worked with same impairments

-14-

she alleged made her unemployable).

The next mental health treatment that the Plaintiff receives is at the Ozark Guidance Center, Inc. on April 29, 2005. (Tr. 237). By May 6, 2005 the Plaintiff was worried about going to jail because she had an altercation with an ex-boyfriend while intoxicated. (Tr. 236).  The Plaintiff reported that she had not had anything to drink in 7 days and the counselor noted that her "anxiety is probably related to stopping drinking alcohol." (Tr. 234). Just a few days later, on May 12, 2005, the Plaintiff admitted that she was currently binge drinking (Tr. 232) and that she was drinking with an exboyfriend and ended up in a fight and the police were called. (Tr. 230). On May 17, 2005 the counselor notes that the Plaintiff is drinking with her new friend and continuing to make impulsive decisions. (Tr. 229).  On May 31, 2005 the Plaintiff stated that she was moving in with a man she met in a bar. (Tr. 226).  On November 16, 2005 the Plaintiff admitted that she was drinking to ease feeling and taking medication other that what was prescribed.  The counselor noted that Plaintiff was not following through with services. (Tr. 224). On November 16, 2005 the records note that the Plaintiff  "walked off the job at Walmart. She is applying for disability."  The counselor noted that the Plaintiff continues to "use alcohol sporadically to comfort or regulate the way she feels."  (Tr. 223).  The Plaintiff continued to abuse alcohol during her treatment and on July 11, 2006 reported that she was trying to arrange for her 13 year old nephew to come and live with her. (Tr. 200).  The Plaintiff also acknowledged that she "was accused of being an alcoholic, because I would drink so much to make the anxiety or panic go away. I would drink to relieve stress. (Tr. 104). The August 2007 therapy notes indicate that the Plaintiff was arrested for battery during a drinking binge and also arrested for DWI during the time period. (Tr. 314).

-15-

Substantial evidence supports the ALJ's finding that substance abuse is a contributing factor material to the determination of Plaintiff's disability (Tr. 24). The ALJ's decision shows she considered all the medical records, and elected to point out only three instances showing she had a substance abuse problem (Tr. 16-19, 21-23). The ALJ is not required to discuss all evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. The Plaintiff indicated in November 2005 that she had no problems with her personal care (Tr. 98), that she does clean her house and do laundry but that she never gets done with either one (Tr. 99), that she does go out every day, she can walk and drive and she does shop for food. (Tr. 100). The plaintiff said that she did not spend time with others (Tr. 101) but this is contraindicated by the therapy record. The Plaintiff appears to have believed that she was capable of taking care of a 13 year old on July 11, 2006 (Tr. 200) but, according to her testimony decided that she could not do it because of the stress (Tr. 393). The Plaintiff did acknowledge on May 23, 2006 that her uncle was living with her and she was doing yard work. (Tr. 209). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir.1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir.1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir.1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir.1993) (ability to live alone, drive, grocery shop, and perform housework with some help from

-16-

a neighbor). Clearly the Plaintiff's level of activity is inconsistent with a finding of disability.

**RFC:**

The Plaintiff next contends that the ALJ erred when she failed to consider the Plaintiff's treating physicians' opinions in accordance with SSR 96-2p and failed to re-contact her treating medical providers as required by 20 C.F.R. §404.1512(e).

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).  "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC."  *Id*.

The ALJ determined that if Plaintiff stopped the substance abuse, Plaintiff would have the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds

frequently, and to sit, stand, and walk six hours in an eight-hour workday (Tr. 48 - Finding 6).

The ALJ also found that Plaintiff was restricted from driving and was limited to jobs that

involved only noncomplex, simple instructions with little judgment and work that is routine,

repetitive, and learned by rote with few variables; was able to engage in work that involved only

**superficial contact** incidental to work with the public and coworkers; and was able to work

where the supervision was concrete, direct, and specific (Tr. 20 - Finding 7). The ALJ concluded

that if Plaintiff stopped the substance abuse, she would be able to perform her past relevant work

as an egg inspector, deboner, and eviscerator, which did not require the performance of

work-related activities precluded by her residual functional capacity (Tr. 23 - Finding 8).

The Plaintiff furnished medical opinions of social workers Joan Warren and Rebecca

Zeleny and Dr. Edwin C. Jones from Ozark Guidance, Inc. as well as Dr. Spann to support her

allegation that despite her "drug addiction and/or alcoholism," her mental limitations would still

render her disabled. *See* Plaintiff's Brief, at 6-7. The evidence shows that the ALJ specifically

considered the medical records in her decision. (Tr. 17-18) and did not find them persuasive.

On August 9, 2006, the SSA issued Social Security Ruling (SSR) 06-3p, 71 Fed.Reg.

45,593 (Aug. 9, 2006). The ruling clarified how it considers opinions from sources who are not

what the agency terms "acceptable medical sources."

Social Security separates information sources into two main groups: acceptable medical

sources and other sources. It then divides other sources into two groups: medical sources and

non-medical sources. 20 C.F.R. §§ 404.1502, 416.902 (2007).

Acceptable medical sources include licensed physicians (medical or osteopathic doctors)

and licensed or certified psychologists. 20 C.F.R. § § 404.1513(a), 416.913(a) (2007). According

to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, id., (2) only acceptable medical sources can provide medical opinions, 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2007), and (3) only acceptable medical sources can be considered treating sources, 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2007).

Other sources: Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. Non-medical sources include school teachers and counselors, public and private social welfare agency personnel, rehabilitation counselors, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2007).

The Plaintiff asserts that a letter from Joan Warren to Whom It May Concern which sets forth the proposition that the Plaintiff "is unable to maintain employment" is somehow definitive of that proposition.  It is clear that Ms. Warren, saw the Plaintiff from May 12, 2005 (Tr. 237) to September 6, 2006 (Tr. 335-336) in her capacity as an LCSW employed with Ozark Guidance, Inc.  Her clinical notes during the treatment of the Plaintiff are vital and have been considered by the court but her summary opinion that the Plaintiff is unable to work is outside her realm of qualification. Only acceptable medical sources can provide medical opinions, 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2007), and (3) only acceptable medical sources can be considered treating sources, 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2007). *Sloan v. Astrue,* 499 F.3d 883, 888 (C.A.8 (Iowa),2007).  The ALJ was correct to discount this opinion concerning the

ultimate fact in the case.

Ms. Zeleny  saw the Plaintiff in her capacity as an LCSW with Ozark Guidance. The court notes that Ms. Zeleny saw the Plaintiff on July 6, 2007 for a Diagnostic Interview. Ms. Zeleny saw the Plaintiff for counseling on July 9, 2007 (Tr. 316-323), August 23, 2007 (Tr. 314-315), September 10, 2007 (Tr. 312-313) and October 11, 2007).  Ms. Zeleny noted that the Plaintiff alcohol had increased and she was facing criminal charges for battery and DWI, that she was not diagnosed with PSTD, and that the Plaintiff wanted to be diagnosed differently because it would help with her Social Security Claim.  The court believes that the ALJ properly considered the medical source statement provided by Ms. Zeleny.

"Information from these 'other sources' cannot establish the existence of a medically determinable impairment," according to SSR 06-3p. "Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."

The first time Dr. Jones, with Ozark Guidance, Inc., appears in the record is July 31, 2006 conducting an intake on the Plaintiff.  He continued her on abilify 5 mg and instructed her to stop drinking. His note says that he "will not give benzios or other drugs of abuse due to risk." (Tr. 339).   The Plaintiff then resumed her group therapy with Joan Warren and others at Ozark Guidance, Inc. The court cannot find another instance when Dr. Jones saw the Plaintiff.  The court also notes that in regards to the question of the Plaintiff's ability to work in coordination with or proximity to other without being distracted by them and the ability to make simple work related decisions Dr. Jones indicated that it was "unknown".  (Tr. 341).  He also stated that it was

"unknown" if the Plaintiff could complete a normal workday and workweek without interruption from psychologically based symptoms. (Tr. 342).

It does not appear that Dr. Jones or any member of Ozark Guidance every administered any substantive test to the Plaintiff and the only variation between Dr. Nichols evaluation and Ms. Zeleny and Dr. Jones evaluation consisted of their opinion of the Plaintiff's ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes. Ms. Zeleny and Dr. Jones evaluated that Social Interaction at Markedly Limited and Dr. Nichols rated the Plaintiff as Moderately Limited. It is interesting to note that Dr. Spann's assessment agreed with Dr. Nichols in this category. (Tr. 344).

Dr. Spann also opined that the Plaintiff was Markedly Limited in 1) her ability to maintain attention and concentration for extended periods, 2) her ability to work in coordination with or proximity to other without being distracted by them, and 3) her ability to interact appropriately with the general public while Dr. Nichols, Ms. Zeleny and Dr. Jones all opined that the Plaintiff was only Moderately limited in these areas. (Tr. 163-183) Only Dr. Nichols completed the Rating of Functional Limitation and found the Plaintiff Mildly limited in her Restrictions of Daily Living, Moderately Limited in her Difficulties in Maintaining Social Functioning, Moderately Limited in her Difficulties in Maintaining Concentration, Persistence, or Pace and No limitation on her Episodes of Decompensation. (Tr. 183).

Even if Dr. Spann is a treating physician, and the record is not at all clear on that point, a treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions

are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted). In the present case Dr. Spann opinions are not supported by clinical and diagnostic test.

In general the factors for considering opinion evidence include:

• How long the source has known and how frequently the source has seen the individual;

• How consistent the opinion is with other evidence;

• The degree to which the source presents relevant evidence to support an opinion;

• How well the source explains the opinion;

• Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

• Any other factors that tend to support or refute the opinion. *See Sloan v. Astrue*, 499 F.3d 883, C.A.8 (Iowa), 2007

In evaluating the record as a whole the court believe that the ALJ properly considered the Medical Source Statements submitted by the Plaintiff and that substantial evidence supports the ALJ's finding that substance abuse is a contributing factor material to the determination of Plaintiff's disability (Tr. 24).

**V.    Conclusion:**

-22-

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

IT IS SO ORDERED this February 4, 2010.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE